Pettibone et al. *v.* James et al.

HENRY B. PETTIBONE et al. *vs.* NOAH JAMES, Administrator of Ely.

E. having been employed as an overseer by B., who acted as trustee for P., cannot be allowed to occupy a more favorable attitude in regard to the trust estate than the trustee (B.) could, through whom he claims.

A court of equity would in any case very reluctantly touch the body of the estate to pay the expenses of its management. *Held*, that it will never do so where it is shown that the income was sufficient, and had been employed in part for that purpose.

So soon as E. took the individual notes of B., bearing interest as loaned money, it was a complete payment and discharge as to the trust estate.

The *cestuis que trust* cannot be held responsible, for the individual acts of the trustee.

On appeal from the southern district chancery court at Natchez; Hon. James M. Smiley, vice-chancellor.

John Ely, deceased, in his lifetime filed a bill of complaint in the southern district vice-chancery court against plaintiffs in error and others, to subject their property to the payment of a certain sum of money, due him in consideration of services rendered their estate as overseer, during their minority. Decree for complainants below, from which this appeal is taken.

The bill shows that John Ely was overseer, and managed the property of the minors, Henry and Sarah Pettibone, for four years, 1839, 1840, 1841, 1842, at the request of their uncle, G. C. Brandon, who claimed to be trustee under a will for said minors' estate; that the property of said minors was managed by complainant with care and skill, and greatly to the benefit and interest of the said minors; that he often solicited and pressed G. C. Brandon from year to year to pay him the amount due as his overseer's wages, for minors; that the property, or proceeds thereof, was ample to pay his claim, and Brandon gave complainant his three notes or memorandums, in writing, as evidence of the amount due him for "overseeing the Richland plantation" of minors.

He sued Brandon on the notes, and pursued him to insolvency by proceedings at law. Afterwards he filed this bill against the minors, for the amount due for his services as overseer.

*McMurran*, for appellants.

The appellee can have no lien on the property of appellants for the amount charged. In an ordinary case of liens, such as that of the vendor, where there is no express understanding, if he takes independent security it is a waiver of the lien. *Brown et al.* v. *Gilman*, 4 Wheat. R. 255–291; 2 Story, Eq. 478, note.

This is an analogous principle here attempted to be enforced; for the appellee (E.) voluntarily took other security for his debt, and, therefore, waived his right to make his debt out of appellants' property.

Another ground on which I consider the decree of the court below to be fatally erroneous, is this. Brandon was acting as

Pettibone et al. *v.* James.

trustee of the property under a will; and without complainant producing the will to show the extent of Brandon's trust or authority, to show whether the property can be sold, whether, the income alone is liable, the character of the estate or any thing of the kind, the property itself to the extent of the debt is decreed to be sold. Surely, this is decreeing and disposing of property in the dark. It devolved on complainant to produce this will, and to show that this trust estate could be thus seized and disposed of before the court could decree a sale, even if complainant had always looked to the property for his money, and if it could be subjected to his claim under the will of Brandon.

*Carnot Posey*, for appellee.

The main question presented by the bill, answer, and proofs, is simply this. Where a party who appears to act as agent or trustee for another buys property or engages the services of a third person for the benefit of the estate, and the goods are furnished or the services rendered, and the trust estate actually receives the use and benefit of such goods or services, whether the trust estate is not liable in equity for the payment of the goods or services so furnished or rendered for its benefit, if the party furnishing the goods or rendering services has taken the note of the assumed agent or trustee, and pursued him by due course of law to insolvency.

I maintain, that upon the case stated, the estate which has received the benefit of the goods or services rendered is clearly liable; and, in support of this position, refer to the following high authorities, which fully sustain me. 4 Dessausure's (S. C.) Eq. R. 19, *et seq.*; 2 McCord's (S. C.) Ch. R. 105, 111, 112; 4 Dess. (S. C.) Eq. R. 591, 601, 602; 1 McCord's. (S. C.) Ch. R. 267; 6 Johns. (S. C.) Ch. R. 52.

The complainants in error will no doubt rely upon the case of *Garland* v. *Hull*, reported in 13 S. & M. 76, in contravention of the above cited authorities. Upon a hasty view, this case may bear some similarity to the one in controversy, but the particular features of that case are totally different from the one under consideration. The bill was to

42*

recover the amount of several open accounts. The court decided, "that the demands sought to be recovered are plainly legal demands, unconnected with any lien or trust which could give the court of chancery jurisdiction. The bill (the court continues) claims a general balance of account, and claims to have it satisfied out of a particular estate; but it shows no lien or incumbrance upon the estate, or any right to proceed against it, which does not exist in every instance where credit is given to any one who owns property or estate of any kind."

The case cited in 13 S. & M. presents but a slight parallel with this case. Samuel Garland lived in the State of Virginia. But Garland, as his agent, contracted divers liabilities on his account in this State. Now, the relation which exists between these parties is simply that of principal and agent, and the principal is responsible for the acts of his agent, and the parties had a clear remedy in a court of law. Hence their bill was dismissed, for want of equity jurisdiction.

In the present case the complainant had exhausted his remedy at law, and was compelled to seek equity to charge the trust estate.

The relation, too, between the parties, is that of uncle and nephew; and Brandon would not be permitted to defraud a stranger of his rights for the protection of his own relation; and, as before stated, if Brandon had charged the minors' estate with this amount, and reserved the same in his hands to meet his outstanding notes to Ely, and had failed to satisfy his outstanding liabilities, who then could come in and claim the superior equity? Who must be the sufferer? John Ely, who has devoted a large portion of his life, and rendered important services to the minors, or the minors, who have received the benefit of his services? This proposition is too plain to require an argument.

The present case is a parallel, if not stronger case than the one cited in *Cater* v. *Eveligh and Wife,* 4 Dess. (S. C.) R. 19. In that case, "the husband, acting as manager of the separate estate of his wife, had purchased a saw gin for the use of the trust estate of which it had the benefit, the court decided that the trust estate was liable to pay for the saw gin, although the

vendor, believing him to be the owner of the property, took his note, and sued the husband to insolvency."

*S. S. Boyd*, for appellants, in reply.

The authorities referred to by counsel for appellee do not apply to such a case as this, even if a special agreement was shown.   They relate to charges created by a trustee for the benefit of the *cestui que trust* in the management of the trust estate.

In the case of a settlement upon a wife, a trustee or his agent may bind the trust estate, so that the property will be liable even when he may have closed the transaction with his individual note or obligation.   But this can only be where the relation of trustee and *cestui que trust* exists, and where it would be inequitable for the *cestui que trust* to receive the benefit, and the creditor to go unpaid.   4 Dess. E. R. 19; Ib. 602.   The case cited by counsel for appellee in 6 Johns. Ch. R., is to the same effect.

The claim set up in the bill in this case, is based on no such grounds as the authorities cited by counsel go to sustain.

It has been distinctly decided by this court, that no lien can be established against an estate to satisfy the simple contract debts of the principal or his agent.   13 S. & M. 76.   This is said not to be a simple contract debt, but a judgment.   Such being the case, it only places the appellee in a worse condition; for a judgment against Brandon cannot be satisfied out of the estate of the Pettibones.

The demurrer ought to have been sustained, and the bill dismissed.

Mr. Justice FISHER delivered the opinion of the court.

This was a bill filed by the appellee's intestate, John Ely, in the vice-chancery court at Natchez, to subject the estate of the appellants, Henry B. and Sarah Pettibone, to the payment of a certain debt, alleged to be due to the complainant for his services rendered as overseer on their plantation, during the years 1839, 1840, 1841, and 1842.

The facts appearing by the pleadings and proof are as fol-

lows: The complainants in error, Henry and Sarah, during these several years, were minors, and their estate, consisting of a plantation, slaves, stock, &c., was managed by their uncle, Gerard C. Brandon, at whose instance the complainant acted as overseer on said plantation. Brandon, in his answer, says, that he was the surviving trustee under the last will and testament of Gerard Brandon, deceased, and by virtue of this trust managed and controlled said plantation. He further says, that he made frequent settlements with the complainant, and upon each occasion gave his (Brandon's) note for the amount then due, bearing interest, &c. He also says, that he settled annually his trustee accounts, and retained on each settlement the sum due complainant for his year's wages. Instead of paying the money thus retained over to the complainant, it was agreed that Brandon should hold it, and consider it as a loan from complainant.

The complainant, having sued Brandon in the circuit court of Wilkinson county, recovered a judgment against him on the 2d of June, 1846, on account of the money then due for his services as overseer, for the sum of $2,661, upon which an execution was issued, and returned *nulla bona.* Having failed to collect his money at law, he insists by his bill, that inasmuch as his services were bestowed in the management and protection of the trust estate, it ought in equity to be subjected to the payment of his judgment. However correct this position may be as a general rule, it has no application to the present case. The complainant cannot be allowed to occupy a more favorable attitude in regard to the trust estate, than the trustee, Brandon, through whom complainant claims. A court of equity would, in any case, reluctantly touch the body of the estate merely for its support or management. It will never do so, when it is shown, that the income was not only sufficient, but had been actually employed in part for this purpose. Here the trust money was placed in the hands of the trustee, for the purpose of paying the complainant's debt. The moment the complainant took the trustee's notes bearing interest for the money, and agreed that the trustee might retain the money at interest, it was as to the trust estate a complete payment and

discharge. It was thereafter, to all intents and purposes, purely a personal contract between the parties thus contracting. Any other rule would enable the trustee to speculate upon the estate in his hands. Instead of his investing the surplus, or putting the money at interest, he would be managing it so as to charge the *cestui que trust* with interest. It is true, the trustee would be chargeable with interest on the money in such case, upon settlement with the *cestuis que trust.* But in the present case,' Brandon was only the appellants' agent or trustee to make payment, till he settled with the complainant. When he made such settlement, he executed this particular trust or agency. The *cestuis que trust* were not, thereafter, responsible for the acts of the trustee in this respect.

· Decree reversed, and bill dismissed.

SMITH, C. J., having been of counsel in the court below, gave no opinion.