RIVES, J.
The facts of this case are simple and un contested. In December, 1836, Larkin Litchfield having qualified and given bond with security as guardian of Mary Atkinson, placed her, being then of fender years, with her relative Mrs. Ann Frost in the city of Norfolk, for education and support. He defrayed her charges to the year 1839; and afterwards gave three several bonds on settlements, respectively, of the 27th August, 1840, 18th February, 1841, and 14th day of April, 1843. The balance of Mrs. Frost’s demands consists of an open account, extending to August, 1844, and amounting to the sum of $226.99. In March, 1845, Mrs. Frost ^having failed to receive payment of these claims, brought suit in equity against the guardian and his securities, alleging his promise to pay her out of the profits of his ward’s estate; the sufficiency of those profits; the insolvency of the guardian; and concluding with a prayer for the settlement of the guardian’s accounts, and a decree for her debt against him and his securities out of any balance that might be found due to his ward aforesaid. After-wards, in June, 1845, she amended her bill to make new parties of the appellants Barnum, Billups and Diggs, who had, on the 13th of June, 1842, become bound as counter securities for any loss or injury that had accrued or might afterwards accrue to the sureties of his first official bond.
On the 11th day of October, 1851, the said original and amended bills were taken for confessed, and the court directed an account of what was due to the plaintiff, and required of the commissioner a report of the annual income of the estate of the ward, and the suitableness to her estate and condition in life, of the plaintiff’s charges for her maintenance and education.
In compliance with this interlocutory order, the commissioner reported in March, 1852, a balance -due the plaintiff from the said guardian, of $601.65; a statement showing the annual income of the ward in excess of the charges; and lastly, his opinion that these charges were suitable to her estate and condition in life. The materials of this report, so far as it concerned the ward’s income and estate, seem to have been derived from another cause pending in the same court against said guardian in the name of another of his wards, John B. Atkinson.
The appellants, Barnum and Billups, obtained leave of the court on the 12th day of April, 1853, to file their answer; and in that answer, they set up the following de-fences: that the ward’s estate was not liable; that the *claim was by in-tendment of law against the guardian ; that his credit and liability had been *393 accepted in discharge of his ward’s estate; that plaintiff’s acceptance of the guardian’s notes, and receipts of the accounts, on which they were based, already credited in the settlement of his guardian accounts, acquitted the ward’s estate and the respondents of all further liability therefor, and ousted the plaintiff of any recourse against the trust funds in the hands of the court for the payment and indemnity of said guardian’s creditors and securities; and that on the ground of equal equities and a special lien under said trust deeds, the plaintiff should lose her debt rather than devolve it upon the respondents.
There was no exception taken to the commissioner’s report. The cause was finally heard on the 12th day of October, 1858. In the meantime Mrs. Frost had died. The cause was then revived in the name of Edward Sale, her personal representative ; the commissioner’s report confirmed; and “decree rendered in favor of the appellee for the sum reported by the commissioner, first against Iyitchfield’s administrator, and then against appellants Barnum, Billups and Diggs’ administrator.”
I presume no question can be made of the jurisdiction of equity in this case. The liability of the ward’s estate, if it exist at all, can only be asserted in a court of chancery. This court has, for a long course of years, reckoned among the subjects of its original jurisdiction, the care of infants and the protection of their rights and estates. Guardians are but the ministers and agents of these courts in the administration of these functions; and are subject to their instructions, in the use of the profits or capital of the' estate of their wards. While the common law admits of a suit against an infant for necessaries, it is the peculiar province of a court of equity to give relief to a creditor as against the estate of such infant. *So far, then, as this bill seeks a discovery of the infant’s income, a settlement of the guardian’s accounts, and a satisfaction of the plaintiff’s claim out of the ward’s estate, for which the guardian’s securities are responsible, it is peculiarly and exclusively a case of equitable resort; nor has any question on this head been raised by demurrer to the bill or otherwise.
At common law, a contract of the guardian is deemed personal, and the liability cannot be shifted to the infant. Thus, where necessaries were furnished by permission of the guardian and charged to him, although the credit was given on the ward’s estate, the infant was not personally liable; but had the guardian taken credit for the account in his settlement, it might be otherwise. Simms v. Norris & Co., 5 Alab. R. 42.
But where there is no ground to assert or imply a personal contract of the guardian, and where the credit and reliance rest exclusively on the ward’s estate, there is no reason or policy of the law that would forbid the assertion in a court oí equity of such a claim upon the ward’s estate in a course of administration and settlement in such a forum.
The first inquiry,’ then, that arises in this case, is as to the nature of the agreement and understanding between the parties as to the support and charges of this infant. Did Darkin Ifitchfield bind or intend to bind himself personally for his ward in this respect? Did Mrs. Frost accept such personal contract of the guardian in lieu of all claim on the infant’s estate? Both of these questions must be answered in the negative, upon the pleadings and evidence in this cause. The bill sets up the guardian’s undertaking to pay out of the profits of the ward’s estate; the bonds of the guardian in terms repel the theory of his personal liability, because they recite that they are for the board of the ward or for the settlement *of ward’s accounts, and are signed by him as guardian; and finally, the testimony establishes the undertaking of the guardian at the time of executing his several bonds aforesaid, that “as soon as he could collect the funds of the estate, he would settle them.”
The guardian rejects the idea of personal accountability; the custodian of the ward neither invites nor insists on it; but by mutual agreement they both refer the liquidation of the accounts for maintenance to the ward’s income. Mrs. Frost had been, doubtless, advised that her accounts could not be permitted to encroach on the capital, but must be satisfied out of the profits of the ward’s estate: hence, she is put off by the. guardian on the pretext of his not collecting the annual revenues; and consistently looks to that source for payment. Perhaps she might have enforced a personal liability on these bonds against the guardian at law, where his addition would be treated as a mere “descriptio persons;,” especially if the bonds stood alone, without the opposing proofs: but it is otherwise in equity, which regards the substance rather than the form, and explores the acts of the parties to give effect to their intentions.
I might cite many analogous cases to show that the liquidation by bond of an agent or trustee should not be allowed to extinguish the primary demand against the principal or the trust, where such clearly existed, upon equitable principles. Thus, where a saw gin had been sold to a husband, who was the ostensible owner of the plantation on which it was operated; credit given to him and his note taken therefor, sued on and prosecuted to insolvency; but when it was afterwards ascertained that the husband was only the manager, and the estate belonged separately to the wife, the trust estate was held liable for the debt. Cater v. Eveleigh, 4 Dess. R. 19. So, again, a trust estate was held liable for supplies, ^though charged personally to the husband, and his note taken therefor. James v. Mayrant, 4 Dess. R. 591. In the case of Douglass v. Fraser, 2 McCord Ch. R. 105, testator’s estate was held liable for testator’s and executor’s dealings for benefit of his estate, although *394 executor gave his note for both accounts; and it was said, ‘ ‘the mere circumstance of the executor having1 liquidated the demand cannot exempt the estate from the payment of a debt otherwise chargeable upon it.” But where the trustee’s note was received as an investment upon interest, it was considered, as to the trust estate, a complete payment and discharge. Pettebone et al. v. James, 25 Miss. R. 495. In view of these authorities, I cannot see how it can be successfully contended that the giving of these notes by the guardian, under the circumstances, can be held to extinguish the appellee’s claim upon the infant’s estate, if such claúrn is properly cognizable in equity.
Now, the question arises, to whom are those who support minors, to look for the payment of their charges? Certainly not to the guardian in the absence of express contract. By virtue of his 'office as guardian, he incurs no personal liability to any one for their support and maintenance. But clearly the remedy for those who furnish necessaries to minors under guardianship having property, is against, their estate in the hands of the guardian, and not against the guardian personally, unless he enters into a contract on which he can be held liable individually. Spring v. Woodworth, 4 Allen’s R. 326. A person furnishing necessaries to a ward cannot recover, in action of assumpsit, of guardian as upon an implied assumpsit for maintenance and support. The only remedy against the guardian who neglects his duty in discharging the proper debts of the ward, or claims for necessaries furnished . for the ward, is an action on the probate bond. *Cole v. Eaton, 8 Cush. R. 587. The condition of such bond in Massachusetts (Rev. Stat. ch. 79, § 10) is fourfold — 1. to make and return a true inventory ; 2. to 'dispose of and manage, &c., and faithfully discharge his trust in relation thereto and to the custody, education and maintenance of the ward; 3. to render an account on oath in one year and when required; and 4. at. the expiration of his trust to settle his accounts and pay over and deliver, &c.
Our present law, as well as the act of 1819, under which Litchfield qualified and gave bond, prescribes the condition to be for “the faithful execution of his office.” This is as comprehensive, doubtless, as the Massachusetts statute, and as clearly embraces the duty of the guardian to pay the debts out of the property of the ward as far. as the assets will suffice; so that to the extent of those assets, a failure to pay the debts is a violation of his duty, and of course a breach of the condition of the bond, as was decided in the case of Conant v. Kendall, 21 Pick. R. 36. Therefore, if Litchfield’s bond had been legally conditioned, Mrs. Frost might have sued directly on his official bond, assigning as a breach his failure to pay her debt, although the ward’s income was sufficient for the purpose.
But the condition of Litchfield’s bond is not for 1 ‘the faithful execution of his office, ’ ’ as prescribed by law. But it is not, therefore, void except as- to any condition imposed beyond what the law requires, and it is good so far as it is in conformity with the act; as was decided in the case of Pratt v. Wright et als., 13 Gratt. 175. In that case, the condition of the guardian’s bond was identical with the condition of Litch-field’s first bond: it follows a very ancient form under the act of 1748 directing the courts to “take good security of all guardians by them appointed for the estates of the orphans to them Respectively committed. ’ ’ It was held in that case, that the condition to indemnify the justices, was void; but .that the condition to pay over and deliver all such estate as shall hereafter appear to be due to the wards when they attain lawful age, or when thereto required, was good, and bound the obligors to that extent, although it comprised only a part of the duty of the guardian, and was not as extensive as the statute requires. It is also material to remark that it was also held in this case that “the right to sue at law on the bond was not in exclusion of the jurisdiction of chancery to hold the guardian to an account, and his securities with him, to the payment of any balance found due to his ward.”
Litchfield’s securities cannot be held liable beyond the scope of their express undertaking; and that was to “pay and deliver unto the said orphans all the estate due them from said guardian, when thereto required,” &c. Now the amount-due them is clearly what remains after the payment of the debts and expenses properly chargeable against the wards. Let us suppose that Mary Atkinson had proceeded against her guardian and his securities for an account of the guardianship, and a decree for her share; would it not be competent for her to allege that charges against her were outstanding and unpaid by her .guardian, and should be provided for by the account and decree designed to ascertain and adjudge her dues? The securities could not object, because if such outstanding debts were discarded from the guardian’s accounts the balance in favor of the ward would be enlarged to that extent; and it would be immaterial to them whether to that amount they paid creditors or the ward. Why may not the creditor of the ward be subrogated to the ward in such case, and be entertained in a court of chancery upon an independent bill against the guardian and his securities preferring claims against the ward’s estate, and asking *for their payment out of it, before the balance be adjudged to the ward? In like manner the securities cannot be prejudiced, because to the extent of the decree against them for the creditor’s-demand; the balance in favor of the ward is abridged; and vice versa, so far as released from the creditor their liability to the ward is -enhanced. It is admitted by the respondents in this case, that they have got the benefit on the settlement *395 of the guardian accounts of the receipts given by the complainant to the guardian. Nevertheless, it is proven that these receipts were nominal rather than real; and that it at least savored of a fraud, if it was not a fraud, to allow the insolvent and derelict guardian to avail of these fictitious credits to shield himself and his securities from proper accountability. Whether these credits were allowed the guardian, after they were distinctly challenged by the plaintiff’s bill in 184S, does not appear here, though it doubtless did to the court below, before whom the guardian accounts were settled in the case of John B. Atkinson v. Litchfield, mentioned in the commissioner’s report. The bill charges that there had been no settlement of the guardian account; and it is in the answer only, filed on the 12th April 1853, we are for the first time informed that these credits had been given for the complainant’s receipts; so that it is probable the guardian and these securities availed of these nominal and apparent credits with the full knowledge that they were not truly allowable. Surely, it would be inequitable to admit this relief of the securities as against the larger balance, which would be found against them, if these credits were disallowed; and would be wholly without injury to them, to subrogate the ward’s creditor to the rights of the ward, who can only be entitled in equity to receive the fund due her after the discharge of the rightful liabilities attached to it.
From this view of the cause, I con-elude that the remedy *of Mrs. Frost was not against the guardian personally ; but against the ward’s estate in his hands; that she could only pursue it in a court of chancery against the ward’s income; that inasmuch as the ward’s eventual share can only be ascertained after the allowance of all rightful charges, it was the right of the ward, and by substitution, of the ward’s creditor, to demand of the obligors in the guardian’s official bond the discharge of the ward’s estate of its liabilities, legal or equitable; and that in this way no injury can result to the securities, while a meritorious demand upon the ward’s estate is satisfied by them.
For these reasons, I am of opinion to affirm the decree.
JOYNFS, J.
As this is a case of the first impression, and as the court is divided in opinion, I propose to state briefly the grounds upon which I have come to the conclusion that the decree of the Circuit court ought to be affirmed. It is well settled that an infant who is supplied with necessaries by his parent or guardian cannot incur a personal liability to pay for articles supplied to ’ him, though such as would, under other circumstances, fall under the description of necessaries. For the infant being already supplied by the parent or guardian, the articles are not necessaries. But this case involves no question as to the personal liability of the infant.
Baying out of view for the present, the bonds which Mrs. Frost subsequently took from the guardian, let us inquire what was the legal effect of the contract which the guardian made with her for the maintenance of his ward. We do not know the precise terms of that contract, nor whether there was any special or formal contract at all. But it may be assumed that the guardian entered into a contract, express or implied, which bound him personally to pay for the maintenance of his ward. This contract imposed no personal liability on the ward, and an ^execution founded upon it could not be levied on the property of the ward. This has been held in numerous cases. Bac. Abr. Infancy and Age, 1; 5 Miss. R. 299; 6 Id. 58; 5 Alab. R. 42; 4 Watts & Serg. R. 118; 2 Strobh. R. 2. See also, 2 Conn. R. 386; 11 N. Hamp. R. 51; 1 Hill S. C. R. 279; 6 Watts & Serg. R. 82; 1 Bailey’s R. 344; 4 Allen’s R. 326.
It is contended on the part of the appellants, that a contract by a guardian to pay for maintenance furnished to his ward, gives to thé person with whom it is made only a right to enforce this personal liability of the guardian, and gives him no claim, at law or in equity, agains the estate of the ward, except such as he' may make by substitution to the right of the guardian to apply the profits of the ward’s estate to the payment of the debt.
According to this view, the right of the guardian to apply the profits of his ward’s estate to pay the expenses of his maintenance, is nothing more than a privilege to the guardian, for his own benefit only. He is regarded as under no obligation to do so, because if he is under such an obligation, the person furnishing the maintenance would have a right to claim its fulfillment for his benefit. It follows also from this veiw, that where the profits of the ward’s estate have been wasted by the guardian, his securities cannot be made liable to the person who furnished the maintenance.
For as the guardian himself could make no claim against his securities, the creditor claiming by substitution to him and standing in his shoes, would be equally unable to do so.
I do not concur in this view of the rights of the parties. It seems to me that the law places the guardian under an obligation to provide for the maintenance of his ward out of the profits of his ward’s estate; and that a person who furnishes maintenance to the ward under a contract with the guardian, but who does not give ex-elusive credit to *the guardian, has a right, which a court of equity will recognize, to have those profits so applied for his benefit. The creditor in such a case, in addition to his claim at law against the guardian, upon his personal contract, has a direct and original claim in equity, and not merely a claim by substitution to the guardian, to be paid out of the profits of the ward’s estate.
The cases referred to above were, all of them, actions at law. They determine that, at law, the contract of the guardian to pay *396 for the maintenance of the ward, binds him and him alone; but they do not affect the question of the right of the party who furnishes the maintenance to claim payment of his debt, in equity, out of the profits of the ward’s estate. This right seems to me to result from the general doctrines of equity in reference to infants. Where an infant, with no father living, has estate yielding profits, the policy of the law is that these profits shall defray the expense of his maintenance. This principle is applied according to the circumstances of the particular case, so as to promote the welfare of the infant, and to compensate those who supply his wants. Accordingly, the profits will be applied to provide for future maintenance, and when justice requires it, they will be applied to pay for past maintenance. If the infant has a guardian, the guardian may, if he chooses, incur a personal liability by contract, express or implied, to pay for the maintenance. The guardian may, in such a case, apply the profits to the payment of the debt in the first instance, or he may apply them to reimburse himself after he has paid the debt out of his own pocket. If he does neither, or if he refuses, as he may, to incur a personal liability, I- apprehend that the person who supplies the maintenance still has his claim against the profits of the ward’s estate. If the guardian dies, or resigns, or is removed from his office, and so does not receive the *profits which should páy the debt, the court will see that they are applied, though received by his successor, éither to his reimbursement or to the satisfaction of the creditor, according to the circumstances of the case. And so if the guardian wastes the fund and becomes insolvent, it seems to me that the law will carry out its policy and secure the ends of justice, by holding his securities responsible to the creditor for his breach of duty, in failing to apply the profits of the ward’s estate, to his maintenance, if the condition of their bond covers that duty.
The liability of the profits of an infant’s estate to pay the expenses of his maintenance has long been recognized by statute in this state. And the present Code, embodying the substance of former laws on this subject, expressly recognizes the obligation of the guardian to apply the profits of the ward’s estate to his maintenance. It provides that the guardian “shall have the custody of the ward, and the possession, care and management of his estate, and out of the proceeds of such estate shall provide for his maintenance and education.” Code of 1849, ch. 127, l 7.
Thus it seems to me that the law recognizes an original liability on the profits of a ward’s estate to defray the expenses of his maintenance, and an obligation on the guardian to apply them to that object, the benefit of which may be claimed by a person who furnishes maintenance to the ward without relying exclusiveljr on the credit of the guardian. Indeed the law itself is the real' guardian of the infant. The person who is denominated guardian is only the agent and instrument of the law, deputed, from necessity, to carry out the principles and policy established by it for the care and protection of the infant and his property. And this being so, the law will not suffer its policy to be defeated by any act or default of its instrument.
*This view of the subject, which it appears to me to result from the general principles and policy of the law, is necessary for the welfare of the infant, and the only one that would be just and convenient in practice. If the guardian alone is responsible to the person who furnishes the maintenance, see how it would work in practice. The guardian must, in every case, pledge his own credit, or pay his money in advance, or the person who maintains the ward will have no security. If the guardian has neither money nor credit to advance, or if he refuses to incur a personal liability, how is the infant to be maintained? Some benevolent friend may be sometimes found, willing to “take the chances” of getting paid, but the infant will not always be so fortunate. Thus serious inconvenience and injury to infants might be the consequence of such a doctrine. On the other hand, .if the profits of the ward’s estate are held to be directly liable to the creditor, his debt will be secure in every case, whether the guardian is honest or dishonest, solvent or insolvent, and the infant’s estate, if it yields enough for the purpose, will always ensure the supply of his wants.
No injustice can result from the doctrine which I maintain. It will hold securities liable for what came to the hands of the guardian, but for no more. Justice will be done to the person who furnishes the infant with maintenance, by paying his debt, and no'injustice will be done to the infant, who will only pay for what he gets, and out of the fund especially appropriated by law to the purpose. The gross injustice of the other doctrine is well illustrated by the present case. If that doctrine should prevail, the person who maintained the infant would not get a dollar, though the infant’s income was ample, and the securities would escape liability by sinking, in the hands of the guardian, an amount of profits equal to the debt due for *the maintenance. This would be done by means of a credit given to the guardian for money which has not been paid and never can be, because he was insolvent and dead before the date of the decree. The effect would be to render the guardian’s bond of no avail, to the extent that he has wasted the fund, and for the very reason that he has wasted it, though the wasting of the fund is the exigency for which such a bond is intended to provide.
It has been contended on behalf of the appellants that it would operate as a fraud upon them if they should be held liable in this case after the guardian has obtained credit in the settlement of his accounts for the amount of Mrs. Frost’s claim. So far *397 -from this being- true, it would operate as a fraud upon Mrs. Frost to allow the securities to escape liability on the ground that this credit has been allowed. They were made parties by the amended bill filed in 1845, at which time the guardian accounts had not been settled. These accounts were subsequently settled in a suit to which Mrs. Frost was no party. The securities knew, therefore, when this credit was given and when they relied upon it in their answer in 18S3, that the money for which it was given had never been paid, and never would be, as the guardian was insolvent.
The principles X have been considering apply to the case of Mrs. Frost. There is nothing to show that she agreed or intended to rely exclusively upon the personal liability of the guardian. On the contrary, the bill which was taken for confessed by the ¡guardian and the securities, alleges expressly that the guardian promised to pay her out of the profits of the ward’s estate; and she seems, from first to last, to have looked to these profits as the fund from which she was to receive payment, through the guardian. Her claim to subject the profits of the ward’s estate to the payment of her debt rests, therefore, not merely on the general grounds already discussed, but *on the additional ground also of an express agreement of the guardian to apply them to that object.
I have thus far laid out of view the bonds which Mrs. Frost received from the guardian after the several accounts fell due. It remains to inquire whether her claim against the profits of the ward’s estate was destroyed by the acceptance of those bonds.
It is clear that those bonds, supposing that they bound the guardian personally, did not operate as a merger of this claim, which was collateral to the personal contract of the guardian. The taking of these bonds could only affect Mrs. Frost’s claim against the profits of the ward’s estate, if at all, in case she agreed to relinquish that claim and to accept the bonds in satisfaction. That she had no intention to do so, is apparent from the form of the bonds, and from the proof as to what passed when they were executed. The receipts given upon the accounts at the same time, imported, as stated in the bill, that they were settled by bonds. The bill was taken for confessed, while this allegation, if not true, could have been disproved by the defendants by the production of the receipts themselves.
I have thus far been considering the claim of Mrs. Frost against the profits of the ward’s estate, as between her and the guardian. I come now to consider the case in respect to the securities, who can, of course, only be held liable on their bond. If the bond had been in the form provided by law, that is to say, with ' condition that the guardian would faithfully execute his office, the failure of the guardian to apply the profits of the ward’s estate to her maintenance, would have been a breach of the condition, for which Mrs. Frost, as the party injured, would have been entitled to sue. And a court of equity would have had jurisdiction of the suit, because of the necessity of taking an account of the profits of the *ward’s estate applicable to the payment of the debt, and also because the right to subject the profits, upon the failure of the guardian to pay the debt is only an equitable right. But the condition of this bond is different. It is to pay the ward what shall be found due to her, and to indemnify the justices.
The ward was entitled to recover on this bond the whole amount of the profits which had accrued upon his estate during the guardianship, less such part thereof as had been properly paid away by the guardian, and such other part as he had a right to retain. But the guardian had no right to retain the amount of Mrs. Frost’s debt, which he had not paid and was unable to pay. To allow him to do so, would be to enable him to make a profit to that extent by his default, and to discharge his securities for an amount never paid to any body. All that he or they could make any claim to would be that the debt to Mrs. Frost should be paid so as to release him from his personal liability for it. Besides, as Mrs. Frost’s claim was against the profits of the ward’s estate generally, in whatever hands they might be, she would be entitled to follow and to subject any profits which the ward might recover from the guardian. The ward had a right, therefore, in order to release the profits in her hands from the claim, to demand that the profits properly applicable to it should be applied to it by the guardian, or paid to her that she might so apply them. Inasmuch, therefore, as the ward would have been entitled to recover these profits from the guardian and his securities, and as they would have been liable when recovered, to the payment of Mrs. Frost’s claim, she had a right in equity to be substituted to the ward, and to enforce payment of her debt, to the extent of those profits, from the guardian and his securities.
That the bonds taken by Mrs. Frost from the guardian did not affect her right to sue upon the guardian’s official bond, see Hamlin’s adm’r v. Atkinson, 6 Rand. 574.
*MONCURE, P.
An infant can make no contract binding in law or equity except for necessaries, and when he makes a binding contract for necessaries, he is liable to be sued thereon at law, as if he were sui juris. His disability is intended for his benefit, and does not, when his interest requires that it should not exist. When it does not exist, there is of course no difference in this respect between him and any other person. His obligation is upon his person, and not by lien or quasi lien upon his estate, as in the case of a married woman having a separate estate with a right to charge it by her contracts. The separate estate is a creature of equity, and charges upon it can be enforced only in equity. The legal entity of a married woman is merged in that of her husband, *398 and the instances are extremely rare in which she can he sued alone at law. The general rule and exception thereto in regard to the disability of infants, are both well established at law.
An infant can. make no binding contract even for necessaries, when he is amply supplied therewith from other sources, and that fact is known to the person with whom lie makes such contract. It is only in case of necessity, or a supposed necessity, to prevent his starvation or suffering, that he is competent to make a contract. He is not so competent when he has an ample estate in the hands of a guardian, whose duty it is to apply the profits which are sufficient for the purpose, to the support of the infant, and who is ready and willing to perform that duty. A person who deals with a guardian on credit for necessaries furnished the ward, deals on the credit of the guardian, and not of the ward or the ward’s estate. A contract by a person as guardian, is nothing more than a personal contract binding upon him. Persons who make such a contract with him may, and no doubt generally do, look to the estate of the ward as the source from *which the means of satisfaction are to be derived. But they are to be so derived by the agency of the guardian, and not by any direct claim to be asserted in law or equity by the creditors. A judgment cannot be rendered against a guardian for money to be levied of the estate of the ward, as in the case of a judgment against an executor de bonis testatoris. Pven a promise by a guardian to pay money out of the ward’s estate, is but a personal promise of the guardian, for breach of which he must be sued personally. Possibly, and I may even say probably, if the guardian in such case was personally unable to pay the debt, and had not received money enough to pay it, and applicable to such payment, out of the ward’s estate, the creditor would be subro-gated in equity to the place of the guardian and be decreed satisfaction out of the ward’s estate. But if the guardian had received and wasted the ward’s estate, or the profits thereof, to an amount equal to or exceeding the debt, instead of applying the same, as he ought, to the payment of the debt, certainly the creditor would have no right to relief in equity against the ward or his estate. He would have no ground for sub-rogation when the guardian himself had no claim against the ward or his estate.
The foregoing principles are sufficient to show that the creditor in this case, Mrs. Prost, has no right to recover against the ward, or the ward’s estate, the balance due her1 by the guardian for necessaries furnished the ward at the request and upon the credit of the guardian. The profits of the ward’s estate were much more than sufficient for her support, and were received and wasted by the guardian, .instead of being applied to that purpose; and the securities in the guardian’s bond have been compelled to account for and pay the balance due by him to the ward after deducting all credits, including the balance *due by the guardian to Mrs. Prost as aforesaid. If the guardian had paid the balance due to the ward without deducting the balance due to Mrs. Prost, then, upon the principle of subrogation aforesaid, she might, perhaps, recover the amount due her against the ward. But instead of doing so he died insolvent, leaving a large balance due and unpaid to the ward, which his securities as guardian have since been compelled to pay as aforesaid.
Then the only remaining question is, has Mrs. Prost any right to recover, either at law or in equity, the balance due her by the guardian against his securities? I think not. Bond is required to be given by the guardian ‘ ‘for the safety of the ward, ’ ’ and not for the benefit of the creditors of the guardian, even though the debts due to such creditors may have been created on account or for the benefit of the ward. The ward being an infant, often of tender years, whose estate is placed by authority of law in the hands of an agent, to be managed for the infant and accounted for to him when he arrives at age, the law therefore takes care of him by requiring the guardian to give bond with surety. Those who deal with the guardian do so voluntarily, and do not need an.d have no claim to such protection. They are sui juris and can take care of themselves. They are not obliged to give credit to the guardian on account of his ward, any more than on his own account; and they may require what security they please, as the condition of their doing so. If they neglect to require such security, and fail to recover their claims of the guardian, by reason of his being or becoming insolvent, they have no more recourse against the sureties of the guardian for the recovery of such claims, than they could have for the recovery of any other claim against him, founded upon any other consideration.
That such are the meaning and object of the guardian’s bond and the nature of the liability of his sureties, is ^obvious from the terms of the law requiring the bond to be given, prescribing the form of its condition, and declaring his powers and duties. Code of 1860, ch. 127; and ch. 13, § 8. Chapter 127, g 5, declares, that “every guardian, unless in the case of a testamentary guardian, the will otherwise directs and the court in such case deems it unnecessary for the safety of the ward, shall give bond,’’ &c. “If any court omit to require such a bond, or accept such person as surety or sureties as do not satisfy it of their sufficiency, the judge or justices so in default shall jointly and severally be liable to the ward for anj' damages he may sustain thereby.’’ Section 7'declares, that 1 ‘every guardian who shall be appointed as aforesaid, and give bond when it is required, shall have the custody of his ward, and the possession, care and management of his estate, real and personal, and out of the proceeds of such estate shall provide for his maintenance and education.” “At the: *399 expiration of his trust, he shall deliver and pay all the estate and money in his hands, or with which he is chargeable, to those entitled thereto.” Section 8. “Ño disbursements shall be allowed to any guardian, where the deed or will,under which the estate is derived, does not authorize it, beyond the annual income of the ward’s estate, except in the following cases,” &c. Section 13. “The circuit, county and corporation courts in' chancery may hear and determine all matters between guardians and their wards, require settlements of the guardianship accounts, remove any guardian for neglect or breach of trust; and appoint another in his stead, and make any orders for the custody and tuition of an infant and the management and preservation of his estate.” Chapter 13, g 8, declares that “every such bond,” &c., including a guardian’s bond, 1 ‘shall be with condition for the faithful discharge by him of the duties of his office or trust.” These provisions of the present Code are not *materially variant from the law as it w-as w-hen the guardianship bond in this case was given. 1 R. C. 1819, ch. 108. The condition of the bond as prescribed by g 4 of that chapter, is, “ for the faithful execution of his office, ’ ’ to the same effect and almost in the very w'ords of the present law. And the same form of condition was prescribed by the act of 1785, 12 Hen. St. ch. 86, g 1, p. 195. from which the law on the subject in the Rev. Code of 1819 was derived.
The form of the condition of the bond of the guardian which was executed in this case, and which bears date on the 12th day of December, 1836, was not simply ‘ ‘ for the faithful execution of his office, ’ ’ according to the literal terms of the Code of 1819, but was as follows: “that if the said Darkin Lfitchfield guardian,” &c., “shall well and truly pay and deliver, or cause to be paid and delivered, unto the said orphans, all such estate or estates as now- is, or may hereafter appear to be due to the said orphans from the said guardian, w-hen thereto required by the justices of the said court; as also keep harmless and indemnify the above named justices,” &c. This is the form of condition which seems to have been generally, if not universally, used in the commonwealth, as we find it in Robinson’s Forms, p. — old edition, and pp. 453-4, new edition. See also, Pratt v. Wright, &c., 13 Gratt. 175. It was adopted prior to the act of 1785, Call v. Ruffin, 1 Call 333, and continued afterwards to be used.
The sureties of course are bound only by the bond which they executed, and if that does not bind them for the claim of Mrs. Frost, they are not bound for it at all, whatever may be the obligation of the guardian. There is no ground on which they can be made liable for it in equity, if not liable at law by the terms of their bond. The condition of their bond is, that the guardian shall pay and deliver to the orphan all such estate, &c., and to indemnify *the justices, &c. These terms do not seem to imply, any more than they express, a promise to pay any debt which the guardian may create on the ward’s account and fail himself to pay. But it would have made no difference if the bond of the guardian had been conditioned in the very words of the law, “for the faithful execution of his office. ’ ’ It cannot be said to be a pant of the official duty of the guardian to pay his debts created on account of the ward; and therefore the payment of such debts cannot come within the terms of the condition of the bond as prescribed by the statute, so as to entitle'the creditor, or even the ward, to maintain an action on the bond for non-paj'ment of said debts. The interest and safety of the ward, for which only the bond was designed, does not require that such a right of action should exist. If it be said that while the ward might have an ample estate for his support even out of its profits, the guardian might be insolvent or untrustworthy, so that no person would credit him on his personal liability only, and therefore the ward might suffer for want of the necessaries of life; the answer is, that the law- has made ample provision for such a case. The court of chancery is always open to hear the complaints of a ward against his guardian, whether made by the ward in person or by any friend for him, and may at any time remove the guardian for neglect or breach of duty, and appoint another in his stead, and make any orders it may deem proper for the custody and tuition of the ward and the management and preservation of his estate. Code, p. 589, ch. 127, g 13, cited supra; 1 R. C. 1819, p. 406, g 4.
It seems to me that such is not only the true and sound construction of the law- and the bond, but that it would be in the highest degree unjust to the sureties of the guardian to hold them liable to the creditor in such a case as this. The ward was placed by the ^guardian in December, 1836, with the plaintiff Mrs. Frost, a near relation of the ward, to be boarded, clothed and educated on the guardian’s account, who promised to pay the amount to become due therefor out of the profits of the ward’s estate, which were more than ample for the purpose. The w-ard continued to reside with Mrs. Frost and to be boarded, clothed and educated by her and at her expense, until the 1st of September, 1844. The accounts for the first two years, 1837, and ’38, were paid by the guardian to Mrs. Frost. For the amount of the account for the third year, 1839, due 1st of January, 1840, $74.06, he executed his bond on the 27th of August, 1840. For the amount of the account for the fourth year, 1840, due 1st of January, 1841, $59.93;%, he executed his bond on the 18th of February, 1841. For the amount of account for the fifth and sixth years, 1841 and ’42, $200.26%, he executed his bond on the 14th of April, 1843. To the name of the guardian subscribed to each of these bonds was added the word “guard.” or words “as guard.,” being a contraction for “guardian” or “as guardian.” When these bonds were respect *400 ively executed, receipts were given by Mrs. Frost to the guardian for the amount of the accounts respectively for which the bonds were given. For the amount of the accounts for the seventh and eighth years, 1843, and ’44, which were the last two years, making together $226.99, no' bond appears to have been executed by the guardian, but it is probable that a receipt was given to him for that amount also, to be used as a voucher in the settlement of his guardianship account. At all events it seems that all these accounts have been allowed as credits to the guardian in the settlement of his account, made in a suit in chancery brought against him by the ward, and the balance found due upon such settlement to the ward, has been decreed against the sureties *of the guardian. Mrs. Frost might have demanded payment of these accounts of the guardian as they became due, and resorted to legal means, if necessary, to enforce their payment. Had she done so; had she used due and ordinary ■diligence, she would long since have received her money of him who legally and justly owed it. Instead of that, she has been guilty of the grossest laches, in waiting with him until he wasted all the profits of the ward’s estate and became totally insolvent, and then she came forward and demanded payment of the sureties of the guardian I And that, too, after having given him the receipts for the amount of her accounts to be used in the settlement of his guardianship account, which were actually used and credited in such settlement.
I think she has no right to any relief against the sureties at law or in equity, and therefore that the decree ought to be reversed and the bill dismissed; but the other judges being of a different opinion, the decree must be affirmed.
Decree affirmed.